# THE STATE *vs.* THE CENTREVILLE BRIDGE CO.

1. The Act of the 6th March, 1848, was intended to confer on Jacob Maberry the rights and privileges granted to the Centreville Bridge Co., freed from all liability to forfeiture for any previous act or omission of the company.

2. When no object, in reference either to the public or to individuals, can be gained by a proceeding *in quo warranto*, the cause cannot and ought not to be permitted to progress.

3. The proviso to the Act of the 6th March, 1838, saving " any suit or suits, now pending in favor of or against" The Centreville Bridge Co., was intended to apply only to suits by the company against individuals, or by individuals against the company, and not to a proceeding then pending to declare the charter forfeited.

ERROR to the Circuit Court of Perry. Tried before the Hon. John D. Phelan.

GARROTT, for the plaintiff in error:

1. In this proceeding the State is bound to show nothing. The defendants are called upon and are required to show by

The State v. The Centreville Bridge Co.

what warrant they claim the franchise which they exercise, and they are bound to show every thing required by the act of incorporation to be done in order to establish their legal existence as a corporation.—Ang. & Am. on Corp. 636, § 8; The State v. Ashley, 1 Ark. 513-552-3; Bank of Auburn v. Aikin, 18 Johns. R. 137; Wood v. Jefferson Co. Bank, 9 Cow. 194; Utica Ins. Co. v. Tilgman, 1 Wend. 555; People v. Utica Ins. Co., 15 Johns. R. 358; People v. Kingston & Mid. Turnp. R. Co., 23 Wend. 193-206; Carlisle v. Ca. & M. R. R. Co., 4 Ala. 70.

2. The Act of the Legislature, approved March 6, 1848, does not waive previous causes of forfeiture. To do this, it must appear that the Legislature intended a waiver, either directly or by necessary implication. But any such idea is effectually repelled by the proviso to this act, which expressly exempts all suits, either for or against said corporation, from the operation of said act, and the court would stultify the Legislature by deciding that the proviso was a nullity.—People v. Utica Ins. Co., 15 Johns. R., 358-80-1; People v. Kingston & Mid. Turnp. R. Co., 23 Wend. 193; People v. Manhattan Co., 9 Wend. 351-80-85; Leavett v. Smith, 7 Ala. 175-83; Bowman v. Teall, 23 Wend. 309.

MOORE and PECK, for the defendant: Whatever may have been the defects in the organization of the Company, under the act of 1835, or whatever forfeitures the Company may have been subject to, for non-user or otherwise, the act of 1848 was a waiver of them all, and a confirmation of the corporate privileges in Jacob Maberry; and, furthermore, this proceeding being in the name of the State, and not on the relation of any one, is not embraced by the proviso of the latter act. The proviso was only intended to save suits then pending in favor of the corporation, and suits by individuals against the same. Whatever, therefore, may be the errors in the proceedings in the court below, if any, the judgment is right, and ought to be affirmed. The People v. The Phœnix Bank, 24 Wend. 431-33; The People v. The Pres. &c. of the Manhattan Co., 9 ib. 351; The Commercial Bank v. The State, 6 S. & M. 599; 1 vol. U. S. Dig., p. 595, § 267.

DARGAN, C. J.—The material features of this case,.so far·
as they are necessary to present the question we. propose to·
examine, may be thus stated.   The defendants were created a
body corporate under the authority of an act of the Legislature,.
passed the 7th of January 1835, for the purpose· of building a
toll bridge across the Cahaba river, within one mile of the town
of Centreville, and were authorised to demand and receive toll,
according to the rates prescribed in the act.   On the 6th day
of March 1848, another act was passed, entitled an act to amend
an act, passed the 7th of January 1835, entitled an act to in-
corporate the Centreville Bridge Company, which is in the fol-
lowing language : " Whereas it has been represented to this
Legislature that in consequence of a want of subscription of
stock to an amount sufficient to the construction of the bridge·
contemplated to be built by said act, the contract of said com-
pany has been duly assigned to Jacob Maberry, who has con-
structed the same in a manner greatly advantageous to the pub-
lic ; therefore, be it enacted, that all the rights, privileges and
powers, vested by the above recited act in said corporation, be,
and the same are hereby vested in Jacob Maberry, his heirs
and assigns, for the period prescribed in said act, with power to
collect the same tolls prescribed in said act, and to do such
other acts, and be liable to the same penalties prescribed there-
in ; provided that nothing herein contained shall be so construed
as to affect any suit or suits, now pending in favor of or against
said Company."   Previous to the passage of the above recited
act, the State had filed a *quo warranto* against the Bridge Com-
pany for a supposed forfeiture of their charter, and the Com-
pany now insist on this act as· a bar to this suit.

Although the Company might have been liable to a forfeiture
of their privilege, yet as they assigned it to Maberry, and the
State ratified the assignment and vested in him the same privi-
leges, possessed by the Company under the original charter,
" nothing can be attained by the further prosecution of this suit."
We think it clear that the act of 1848 vested in Maberry all
the rights and privileges, contemplated to be given to the Com-
pany by the act of their incorporation, and these privileges he
holds as his own, and not liable to be taken from him for any
cause of forfeiture that may have existed against the Company.
The State surely never intended to give him those rights, in

consideration of the public benefit he had confered in erecting the Bridge, and at the same time to take them from him, if the Company by their misconduct would have been liable to be deprived of them.   But the plain and manifest design of the Legislature was to vest in Maberry the privileges that had been confered on the Company by their act of incorporation, and they are not liable to be taken from him for any act or omission of the Company that would have been a cause of forfeiture, had they retained their corporate rights.   What then can be the object of prosecuting this suit further?   The State cannot recover the privileges now vested in Maberry, and the defendants have no rights or privileges under the act of their incorporation. Both plaintiff and defendant have united in vesting the subject matter of the controversy in a third person; the suit must therefore end, for further prosecution would be vain and fruitless. It is said to be a rule, that a title to an office will not be tried by *quo warranto*, when at the time of trial the term of office is expired.—The State of Ohio v. Jacobs, 17 Ohio R. 143; Ang. & Ames on Corp. 626.   Whether this rule would apply in all cases, it is not necessary to inquire; but I think it clear that when no object is to be gained by a proceeding in *quo warranto*, neither in reference to the public, nor to private individuals, the cause cannot and should not be permitted to progress.   It has, however, been suggested that the proviso of the act saves this suit, and that it was not the intention of the Legislature that it should be affected by it.   We think the proviso was intended to apply only to suits brought by the Company against individuals, or by individuals against the Company.   It could not have been the design of the Legislature to give to Maberry a privilege for the mere purpose of taking it from him by a suit then pending, and without regard to any act of his.   As the final judgment was against the State, it must be affirmed, for it is the judgment that should have been rendered.